UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
NICHOLAS WIDMER, LINDSEY ROOT, and : **23-CV--**
SOPHIA FITZSIMONDS, in their individual :
capacities and on behalf of others similarly :
situated, : **CLASS AND COLLECTIVE**
: **ACTION COMPLAINT**
                    Plaintiffs, :
: **Jury Trial Requested**
         -against- :
:
SCALE FACILITATION®, DAVID A. :
COLLARD, VANESSA GERONIMO, :
MICHAEL WINN, AND JACKIE NOLLER :
:
                    Defendants. X
------------------------------------------------------------

Plaintiffs Nicholas Widmer ("Plaintiff Widmer" or "Mr. Widmer") and Lindsey Root ("Plaintiff Root" or "Ms. Root") and Sophia Fitzsimonds ("Plaintiff Fitzsimonds" or "Ms. Fitzsimonds") (collectively, "Plaintiffs") on behalf of themselves and the putative class members who are similarly situated, by their attorneys, The Boyd Law Group, PLLC, for their Complaint against Scale Facilitation®, its affiliates, portfolio companies, successors, and related entities under common control, including Recharge Industries™ and SaniteX Global, ("Defendant Scale" or the "Defendant Company") and individual Defendants David Collard, ("Defendant Collard" or "Mr. Collard"), Vanessa Geronimo, ("Defendant Geronimo" or "Ms. Geronimo"), Michael Winn, ("Defendant Winn" or "Mr. Winn"), Jackie Noller ("Defendant Noller" or "Ms. Noller") (together the "Individual Defendants"), and all entities under common control of these Defendants, (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. This is an action seeking equitable and legal relief including applicable damages and attorney's fees for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"), the New York Labor Law § 190 et seq. and Article 19 § 650 et seq. ("NYLL") and applicable wage orders.

2. Plaintiffs allege that Defendants paid wages late and also unlawfully failed to pay their wages in violation of the FLSA and NYLL.

3. Plaintiff Widmer and Plaintiff Root further allege that Defendants made unlawful deductions from their wages for wire transfers and healthcare benefits and taxes while not actually sending the deducted wages to the appropriate partes.

4. Plaintiffs allege that Defendants failed to provide them with pay notice and stubs pursuant to the NYLL.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, by virtue of federal questions, 29 U.S.C. § 201 *et seq.* of the FLSA.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) and 29 U.S.C. § 201 *et seq.* because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Southern District of New York where Defendant Scale's headquarters are located.

## THE PARTIES

**Defendants**

8.Scale Facilitation is a corporation organized under the laws of New York with a principal executive office and principal place of business located on Floor 82 of One World Trade Center, New York, New York 10007.

9.Upon information and belief, a portion of Scale Facilitation is an investment management firm focused on scaling technology and other innovations from domestic markets that do not have the size or scale or that have other barriers in place.

10.Upon information and belief, Defendant Scale has related and affiliated entities including Recharge Industries™, a battery technology manufacturer, re-open.com, a cloud-based platform that learns about locations and recommends optimal services and product types in the needed quantity, and SaniteX Global, a significant global player in health product supplies.

11.Upon information and belief, within the last year SaniteX Global became the operating entity for all Scale Facilitation employees.

12.Upon information and belief, Recharge Industries™ is a portfolio company of Scale Facilitation and made payment to some of Defendant Scale's employees in the time frame relevant to the Complaint.

13.Upon information and belief, Scale Facilitation began to experience financial problems following the acquisition of Britishvolt in March 2023.

14.In or around June 2023, the Australian federal police (AFP) raided the Australian offices of Scale Facilitation in North Geelong. The AFP were acting on behalf of the Australian tax office, which had been investigating the Company over an alleged $150 million tax fraud.

15. In or around August 2023, Scale Facilitation's subsidiary, Recharge Industries, defaulted on its purchase agreement to buy Britishvolt after failing to make the final payment.

16. Upon information and belief, Defendant Scale is facing lawsuits for not paying the rent on the Company's offices in One World Trade Center.

17. Upon information and belief, the New York State Department of Labor has commenced an investigation into Defendant Scale over unpaid wages and the refusal to provide wage statements.

18. Upon information and belief, Defendant Collard is the founder and chief executive officer of Defendant Scale and is an employer of Plaintiffs and similarly situated employees.

19. Defendant Collard is a Manhattan-based global business entrepreneur who runs companies that operate across multiple industries with a focus on advanced manufacturing and innovation generating products and services.

20. Defendant Collard possessed the power to supervise, hire and fire employees of Defendant Scale and to control payroll for same at all times relevant to the Complaint.

21. Defendant Geronimo served as Scale Facilitation's Chief Financial Officer (CFO), and had the power to supervise, hire and fire Defendant Scale employees and to control payroll for same at all times relevant to the Complaint.

22. Defendant Winn served as Scale Facilitation's Chief Operating Officer (COO), and had the capacity to hire and fire and supervise Defendant Scale employees and to control payroll for same at all times relevant to the Complaint.

23. Defendant Noller served as Scale Facilitation's Managing Director, Head of People, and she had the power to hire and fire and supervise Defendant Scale employees and to control payroll for same at all times relevant to the Complaint.

24. At all times material to this action, Defendants was subject to the FLSA and was an "employer" of the Plaintiffs, as defined by § 203(b) of the FLSA.

**Plaintiffs**

25. Plaintiffs, at all times relevant to this Complaint, worked for Defendant Scale, some remote and some from Scale Facilitation's global headquarters located at Floor 82, One World Trade Center, New York, New York 10007.

26. Plaintiff Widmer is a resident of the State of New York.

27. On or about January 20, 2023, Plaintiff Widmer was hired by Defendant Scale as a Senior Manager of Marketing Strategy.

28. Plaintiff Root is a resident of the State of New York.

29. On or about December 27, 2023, Plaintiff Root was hired by Defendant Scale as the Office Manager.

30. Plaintiff Fitzsimonds is a resident of the State of Connecticut, and attends university in the state of Pennsylvania.

31. On or about May 16, 2023, Plaintiff Fitzsimonds was hired by Defendant Scale as an SFO (Operations) Intern.

32. Plaintiff Fitzsimonds was an hourly employee.

33. At all times material to this action, Plaintiffs were "employee" within the meaning of 29 U.S.C. § 203(e).

**FLSA COLLECTIVE ACTION ALLEGATIONS**

34. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 29 U.S.C. § 216(b), on behalf of employees, employed by Defendants on or after the date that is 6 years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

35. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them wages in a timely fashion or at all. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

36. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants records. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## STATEMENT OF FACTS

37. Plaintiff Widmer was paid a bi-weekly base gross salary of $6,875, which came to a net bi-weekly salary of $4,628.58.

38. On April 14, 2023, Plaintiff Widmer, along with Defendant Scale's entire United States team, received an email from Defendant Collard stating that Defendant Scale's payroll system was having issues and that paychecks would come in the following Monday (**Exhibit A**).

39. On April 20, 2023, Plaintiff Widmer, along with Defendant Scale's entire United States team, received an email from Defendant Jackie Noller ("Ms. Noller"), the Managing

Director, Head of People for Defendant Scale. This email asked each employee to fill out a bank wiring instructions form (**Exhibit B**).

40. On April 21, 2023, Plaintiff Widmer received his pay through a wire transfer to his checking account, and he was charged a fifteen dollar ($15) domestic wiring fee.

41. On May 1, 2023, Plaintiff Widmer was not paid in accordance with the Company's pay cycle.

42. On May 4, 2023, Plaintiff Widmer received a wire transfer to his checking account for his pay.

43. On May 15, 2023, Plaintiff Widmer was not paid in accordance with the Company's pay cycle.

44. On May 15, 2023, Plaintiff Widmer, along with Defendant Scale's entire United States team, received an email from Defendant Noller wherein she informed the staff that there was another international transfer issue that impacted payroll (**Exhibit C**).

45. On June 1, 2023, Plaintiff Widmer was not paid in accordance with the Company's pay cycle.

46. On June 2, 2023, and on June 5, 2023, Plaintiff Widmer received wire transfers to his checking account, and he was charged a fifteen dollar ($15) domestic wiring fee on each transfer.

47. For the following six (6) pay cycles, which took place on June 15, June 30, July 15, July 31, August 15, and August 31, Mr. Widmer was not paid through the payroll system or through a wire transfer at all.

48. On July 25, 2023, Plaintiff Widmer messaged Defendant Collard on Teams asking for the status of backpay. Upon information and belief, this message was deleted by

7

Defendant Collard. Shortly thereafter, Defendant Collard messaged Plaintiff Widmer privately stating: "*Hello Nick, appreciate your point but not the right forum on Teams - Comms going out this week and we are closing out on a facility - Thanks.*" However, no comms were ever sent (**Exhibit D**).

49. On July 31, 2023, Plaintiff Widmer messaged Defendant Noller asking for an update on backpay. She responded saying "*Hi Nick, I will have to defer to David on that question, but now he's working to find a solution. If you would like to email him, he will have the most up to date information.*"

50. On August 9, 2023, Plaintiff Widmer received a letter from Defendant Noller addressing the crucial issue with respect to his unpaid wages. This letter confirmed that Plaintiff Widmer had not been paid since May 31, 2023 (**Exhibit E**).

51. Upon information and belief, Plaintiff Widmer has not received a pay stub from the Defendant.

52. The Defendants stopped providing healthcare benefits to its employees, including Plaintiff Widmer, in or around the end of April 2023, moreover, but upon information and belief made deductions from wages as if such coverage was continuing.

53. Upon information and belief, the Defendant Scale continued to withhold wages for healthcare benefits for Plaintiff Widmer, and others similarly situated, even though these benefits were not received.

54. At this time, Plaintiff Widmer is owed as unpaid wages in the gross amount of approximately $41,250.

55. Plaintiff Root was paid a bi-weekly gross salary of $3,958.33, which came to a net bi-weekly salary of $2,652.91.

56. Plaintiff Root has the or similar factual allegations as Plaintiff Widmer contained within the above paragraphs regarding delayed payments, wire transfer deductions, and communications from Defendants Collard and Noller.

57. On June 23, 2023, Plaintiff Root received a wire transfer to her checking account, with a $15 domestic wiring fee, for the pay cycle ending on June 15, 2023.

58. For the following four (4) pay cycles, which took place on June 30, July 15, July 31, August 15, Plaintiff Root was not paid through the payroll system or through a wire transfer.

59. Plaintiff Root resigned from the Company on July 31, 2023, and her last day of work was on August 4, 2023.

60. Upon information and belief, Plaintiff Root has not received a pay stub from the Company since the pay period ending on April 15, 2023, despite requests for same.

61. Upon information and belief, Defendant Scale stopped providing healthcare benefits to its employees, including Plaintiff Root, in or around the end of April 2023.

62. Upon information and belief, Defendant Scale continued to withhold wages for healthcare benefits for Plaintiff Root, and others similarly situated, even though these benefits were not received.

63. At this time, Plaintiff Root is owed a gross amount of approximately $13,458.32.

64. On May 16, 2023, Plaintiff Fitzsimonds signed an offer letter from Defendant Scale.

65. Plaintiff Fitzsimonds was offered an 11-week summer internship at Scale Facilitation with an hourly gross salary of $25.00 dollars per hour for 40 hours per week, with overtime to be approved by her manager.

66. Plaintiff Fitzsimonds worked all eleven (11) weeks of the internship including some overtime work.

67. Plaintiff Fitzsimonds was to be paid via direct deposit on a bi-monthly basis. However, in her first pay cycle on June 23, 2023, Ms. Fitzsimonds received a wire transfer of $1,320.00. This was the only payment she ever received.

68. Per the offer letter, Plaintiff Fitzsimonds' internship began on June 5, 2023, and ended on August 18, 2023.

69. Plaintiff Fitzsimonds relocated to New York for the duration of the internship as in-office work was required for the position.

70. The relocation was a huge added cost associated to Ms. Fitzsimonds' internship, given that there was no relocation stipend from Defendant Scale.

71. At this time, Plaintiff Fitzsimonds is owed a gross amount of approximately $11,000 which accounts for eleven (11) weeks of works plus overtime.

## FIRST CAUSE OF ACTION

### (AS AGAINST ALL DEFENDANTS FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT)

72. Plaintiffs reallege and incorporate all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

73. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

74. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

75. At all relevant times, Defendant Scale as defined herein had gross annual revenues in excess of $500,000 and was engaged in interstate and international commerce with employees involved in such work and exchange of documents.

76. At all relevant times, Defendant Scale had a policy and practice of failing to pay Plaintiffs and FLSA Collective Plaintiffs their wages or even minimum wage in violation of the FLSA.

77. At all relevant times as pled herein, the hourly workers of Defendant Scale were also not paid overtime for hours worked over 40 per week.

78. Records, if any, concerning the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

79. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs when Defendants knew or should have known such was due and after demand for such compensation.

80. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

81. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA 29 U.S.C. § 255(a).

82. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, plus an equal amount as liquidated damages, as set fort in the FLSA, more specifically 29 U.S.C. § 255(a).

83. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### (UNLAWFUL WITHHOLDING OF PLAINTIFFS' WAGES AND DEDUCTIOS FROM SAME AS AGAINST ALL DEFENDANTS PURSUANT TO NEW YORK LABOR LAW)

84. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

85. Upon information and belief, Defendants unlawfully deducted wages from Plaintiffs for, *inter alia*, healthcare benefits and taxes that were not paid to the requisite parties.

86. Plaintiffs and other similarly situated were required to pay wire transfer fees, moreover, which were deducted from their wages in a manner inconsistent with the law.

87. Plaintiffs and others similarly situated were also not paid for their work, timely and sometimes not paid at all in violation of NYLL.

88. Due to the Defendants' violation, Plaintiffs are entitled to recover from Defendants, liquidated damages, damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL.

## THIRD CAUSE OF ACTION

### (VIOLATION FOR FAILURE TO PROVIDE PLAINTIFF WITH PAYSTUBS AND FAILURE TO PROVIDE PAYROLL NOTICE PURSUANT TO NYLL AS AGAINST DEFENDANT SCALE)

89. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs

12

above as if fully set forth herein.

90. At all relevant times, Plaintiffs were employed by the Defendants within the meaning of the NYLL.

91. Plaintiffs did not receive wage notices or paystubs from Defendant Scale pursuant to NYLL § 195.

92. When Plaintiffs were paid they were not always certain what they were being paid for and what withholdings were made.

93. As such, Plaintiffs were required to pay for their own health care and lost potential benefits, have (to date) no clear guidance on what taxes they might owe and needed to incur costs for determining same.

94. Plaintiffs have also been impaired in applying for any number of financial assistance mechanism like credit cards, loans or mortgages by virtue of not having documents that show their earnings.

95. Houlry workers, moreover, were not clear what hours they were to be compensated for working including overtime hours.

96. Due to Defendant Scale's violations, Plaintiffs are entitled to recover from Defendant Scale for each week that they failed to provide Plaintiffs with a wage notice, pursuant to NYLL.

97. As such, judgment should be entered in favor of Plaintiffs and against Defendants in the amount of $5,000.00, along with all reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff Widmer and Plaintiff Root and Plaintiff Fitzsimonds, on behalf of themselves and all similarly situated employees, respectfully request that this Court grant the following relief as applicable:

A.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and NYCRR;

B.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

C.   An award of Plaintiffs' and other similarly situated employees' unlawfully deducted and withheld wages pursuant to the NYLL together with applicable penalties and damages;

D.   A delievery of paystubs to all Plaintiffs and other similary situated employees at the expense of Defendants for tax and related purposes described herein;

E.   An award of prejudgment and post-judgment interest;

F.   An award of costs and expenses of this action together with Plaintiffs' reasonable attorneys' and expert fees;

G.   Designation of this action as an FLSA collective action on behalf of Plaintiffs and all other potential FLSA Plaintiffs and prompt issuance of class notice pursuant to 29 U.S.C. § 216(b) of the FLSA to potential Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations; and

H.   Such other and further relief as this Court deems just and proper.

Dated:  October 27, 2023
        New York, New York

THE BOYD LAW GROUP, PLLC

/s/ _____
Patrick Boyd
250 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 867-3675

Fax: (212) 867-5765
pboyd@theboydlawgroup.com

*Attorneys for Plaintiffs
and all others similarly situated*